# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| PAUL FISHER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **CIVIL ACTION** |
| v. | ) | |
| | ) | **No. 11-2068-JWL** |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) and supplemental security income (SSI) under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act).  Finding the ALJ erred in failing properly to consider the testimony of Plaintiff's case manager, the Commissioner's decision is REVERSED, and judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case.

## I.    Background

Plaintiff applied for DIB and SSI in November 2006, alleging disability beginning October 31, 2005.  (R. 15, 136-46).  The applications were denied initially and upon

reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (R. 15, 76-79, 91-92). Plaintiff's request was granted, and Plaintiff appeared with counsel for a hearing before ALJ William G. Horne on March 23, 2009. (R. 15, 23-24). At the hearing, testimony was taken from Plaintiff and from a vocational expert. (R. 15, 23-75). On June 23, 2009, ALJ Horne issued a decision finding that Plaintiff has the residual functional capacity (RFC) for a range of sedentary work albeit with considerable additional restrictions. (R. 15-22). He determined that although Plaintiff is unable to perform his past relevant work, there are a significant number of jobs available in the economy that Plaintiff can perform. (R. 20-21). Consequently the ALJ determined that Plaintiff is not disabled within the meaning of the Act, and denied Plaintiff's applications. (R. 21-22).

Plaintiff sought review of the ALJ's decision, and the Appeals Council denied his request. (R. 1-4, 9-11, 289-92). Therefore, the ALJ's decision is the final decision of the Commissioner. (R. 1); Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006). Plaintiff now seeks judicial review. (Doc. 1).

## II.    Legal Standard

The court's jurisdiction and review are guided by the Act. Weinberger v. Salfi, 422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)); Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009) (same); Brandtner v. Dep't of Health and Human Servs., 150 F.3d 1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C.

§ 405(g)).  Section 405(g) of the Act provides for review of a final decision of the Commissioner made after a hearing in which the Plaintiff was a party.  It also provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion.  Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that he has a physical or mental impairment which prevents him from engaging in any substantial gainful activity, and which is expected to result in death or to last for a continuous period

of at least twelve months.  Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)); see also, Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A));  accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).  The claimant's impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner uses a five-step sequential process to evaluate disability.  20 C.F.R. §§ 404.1520, 416.920 (2009); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment, and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  If claimant's impairment(s) does not meet or equal a listed impairment, the Commissioner assesses claimant's residual functional

capacity (RFC).  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five-- whether claimant can perform his past relevant work, and whether, when considering vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work.  Blea, 466 F.3d at 907; accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show there are jobs in the economy within Plaintiff's capability.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims four errors in the ALJ's decision.  He argues that the ALJ failed to consider whether Plaintiff's condition meets or equals the Listing for mental retardation; that the ALJ applied the incorrect legal standard when considering whether Plaintiff's alcohol abuse is a material factor contributing to Plaintiff's disability; that the ALJ failed to account for Plaintiff's hand limitations; and that the ALJ erred in failing to discuss the hearing testimony of Plaintiff's case manager.  The Commissioner argues that the ALJ properly performed his step three evaluation and properly evaluated Plaintiff's past alcohol abuse.  He argues that the ALJ's RFC assessment properly considered all of the evidence and found no hand limitations, and that there was no need to specifically discuss

the case manager's testimony.  The court addresses the issues in the order of Plaintiff's brief, and finds error in the ALJ's consideration of the case manager testimony.

## III.   Listing 12.05C - Mental Retardation

Plaintiff claims that he presented a valid IQ score between 60 and 70; that he is entitled to a rebuttable presumption that his deficits in adaptive functioning began before age 22; that the ALJ found additional "severe" impairments; and that therefore the ALJ erred at step three by failing to consider whether Plaintiff's condition meets or equals Listing 12.05C.  The Commissioner argues that although the ALJ did not specifically discuss the criteria of Listing 12.05C, the decision reveals that he found Plaintiff's IQ scores invalid, and substantial evidence in the record supports that finding.  The Commissioner argues that Plaintiff cannot demonstrate deficits in adaptive functioning which began before age 22.  Finally, he argues that Plaintiff did not suggest to the ALJ that his condition meets or equals Listing 12.05C.

Listing 12.05 provides, in relevant part:

> 12.05  Mental retardation:  Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period:  i.e., the evidence demonstrates or supports onset of the impairment before age 22.
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . .
>
> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

6

20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.05.

Listing 12.05 is different than the other listings for mental disorders. Id., § 12.00A. It contains a diagnostic description of mental retardation (introductory paragraph) and four sets of criteria describing listing-level severity (Paragraphs A through D). 20 C.F.R., Pt. 404, Subpt. P, App. 1 §§ 12.00A, 12.05A-D. There are four distinct ways in which a claimant may establish disability pursuant to listing 12.05. Id.; McKown v. Shalala, No. 93-7000, 1993 WL 335788, *1 (10th Cir. Aug. 26, 1993). To meet the listing, plaintiff must show that his condition satisfies both the diagnostic description of mental retardation and any one of the four severity criteria. Id., § 12.00A.

The regulations provide that where verbal, performance, and full scale IQ scores are derived from a test, the lowest individual score of the three will be used when considering Listing 12.05C. 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.00D(6)(c). If the claimant has an additional physical or mental impairment(s) which is "severe" within the meaning of 20 C.F.R. §§ 404.1520(c), and 416.920(c), it will be considered to impose an additional and significant work-related limitation of function in accordance with Listing 12.05C. 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.00A; see also, Hinkle v. Apfel, 132 F.3d 1349, 1352-53 (10th Cir. 1997) (reaching the same conclusion before the regulations were changed in 2000 to specify the equivalence between "severe" impairments and "additional and significant work-related limitation of function."). Therefore, to meet Listing 12.05C, a claimant must show: (1) evidence of deficits in adaptive functioning

7

initially manifested during the developmental period, (2) a valid IQ score of 60 through 70, and (3) another severe impairment.

When, as here, Plaintiff is represented by counsel at the administrative hearing, the ALJ is entitled to rely on Plaintiff's counsel to structure and present his case in a way that his claims are adequately explored.  Hawkins v. Chater, 113 F.3d 1162, 1167 (10th Cir. 1997).  Here, the ALJ asked counsel if he would like to make an opening statement of his case, and counsel did so.  (R. 30-31).  Counsel explained the basis for Plaintiff's disability claim, "We are contending in this case that Mr. Fisher's impairments meet or equal listing 12.04 [(affective disorders)] by reason by [sic] bipolar I disorder, as well as depression.  I believe diagnosed personality disorder as well.  Alternatively if he does not meet the listing I believe that his combined physical and psychological impairments would preclude competitive employment."  (R. 30-31).  Although Plaintiff specifically argued that his condition meets or equals Listing 12.04, he gave the ALJ no indication that he believed his condition meets or equals listing 12.05C for mental retardation.  Consequently, the ALJ did not specifically discuss whether Plaintiff's condition meets or equals Listing 12.05C.  In these circumstances, the failure to specifically discuss Listing 12.05C was not error.

Although the ALJ's step three discussion did not include whether Plaintiff's condition meets or equals Listing 12.05C, he did, in fact, consider Plaintiff's alleged cognitive deficits, and Dr. Ecklund-Johnson's evaluation of Plaintiff's condition:

It is also important to note that questions have been raised regarding the claimant's alleged mental deficits.  In September 2008, Eric Ecklund-Johnson, Ph.D., conducted a consultative mental examination and assessed the claimant's mental abilities.  Overall, the claimant's intellectual functioning was found to be extremely low; however, there were some discrepancies in the test results and Dr. Ecklund-Johnson questioned the validity of these scores.  He also noted the claimant's current and past functioning were inconsistent with these poor test results.  Considering these circumstances, the doctor opined the claimant might have some cognitive deficits; however, he considered these deficits to be much less severe than suggested by testing.  Additionally, the claimant has some history of alcohol abuse and although it appears to have ended, the record reflects it has exacerbated his mental functioning at times.  (Ex. 23F).

(R. 18).

Plaintiff argues both that Dr. Ecklund-Johnson "never indicated the extent of the discrepancy" between the test results and Plaintiff's cognitive deficits (Pl. Br. 12), and that "the ALJ appears to question the validity of Fisher's IQ scores but never goes so far as to find them invalid."  Id. at 11.  Plaintiff's argument ignores both the clear import of the discussion quoted above and the role of the ALJ in resolving ambiguity in the record evidence.

The discussion quoted above reveals:  (1) that the ALJ recognized questions regarding Plaintiff's mental deficits; (2) that Plaintiff's mental functioning tested extremely low; (3) that there were discrepancies in the test results; (4) that Dr. Ecklund-Johnson questioned the validity of the test scores and noted that Plaintiff's actual functioning, both current and past, was greater than the scores would suggest; and (5) that Dr. Ecklund-Johnson found cognitive deficits, but concluded the deficits were much less

severe than the testing suggested.  Although the ALJ did not specifically state a finding that the IQ scores were invalid, the discussion as a whole reveals the ALJ's conclusion that the scores were invalid.  First, as discussed above, there was no need to specifically state the scores are invalid because Plaintiff did not allege that Listing 12.05C was met or equaled.  Second, Dr. Ecklund-Johnson's opinions, as discussed by the ALJ, lead to only one conclusion--that the test scores are not valid.  Dr. Ecklund-Johnson questioned the validity of the scores, and noted that Plaintiff's functioning was greater than the scores suggest.  If Plaintiff functions at a greater level than his scores suggest, and if the validity of the scores is in question, there can be but one conclusion--the scores are not valid.  The fact that Dr. Ecklund-Johnson also found Plaintiff's cognitive deficits are less severe than the test scores suggest, reinforces the conclusion that the test scores are not valid.

Moreover, the record supports both Dr. Ecklund-Johnson's opinions and the findings of the ALJ.  Dr. Ecklund-Johnson's testing revealed a full scale IQ score of 69, in the extremely low range; a verbal IQ score of 65, in the extremely low range; and a performance IQ score of 77, in the borderline range.  (R. 875).  The testing revealed that Plaintiff's intellectual functioning for word-reading performance alone, and uncorrected, was in the borderline range similar to his performance IQ, but Plaintiff's combined level of intellectual functioning when considering various demographic predictors was higher still, in the low average range.  Id.  In the "Summary" to his report, Dr. Ecklund-Johnson noted that validity indices "suggested suboptimal or at least variable effort/task

10

engagement." (R. 879).  He stated, "it is likely that the current evaluation results represent an underestimate of actual ability and should be viewed as, at best, a lower-bound estimate of current functioning." (R. 879) (emphasis added).  He noted that evaluation of Plaintiff's intellectual performance was in the extremely low range, and was of questionable validity.  Id.  In his "Impressions and Recommendations" section, Dr. Ecklund-Johnson stated that, "interpretation of cognitive findings from the current evaluation is limited by indications of questionable validity.  While it is certainly possible that cognitive deficits are present, it is likely that any such deficits are less severe than would be suggested by current test performances.  Personality test findings suggest prominent somatic preoccupation and mood disturbance and it is likely that these factors are contributing to the cognitive difficulties reported by Mr. Fisher." Id. (emphasis added).  Two facts are glaringly obvious from Dr. Ecklund-Johnson's report:  (1) The psychologist did not believe the IQ scores were valid indicators of Plaintiff's functioning. (2) Although Plaintiff had cognitive deficits and his intellectual functioning was borderline, his cognitive deficits were less severe and his functioning was at a higher level than the test scores indicated.

Plaintiff's assertion that Dr. Ecklund-Johnson "never indicated the extent of the discrepancy" between Plaintiff's cognitive deficits and the test scores, does not help his argument.  The report is clear that the difference, "the extent of the discrepancy" to use Plaintiff's words, is significant--that it is sufficient to make a difference in Dr. Ecklund-

Johnson's evaluation of Plaintiff.  As discussed above, the <u>test scores</u> indicated that Plaintiff's functioning is in the extremely low range--or within the range for mild mental retardation.  Moreover, the report indicates that the next higher range is the borderline range, which would remove Plaintiff from the range for mild mental retardation. Therefore, <u>any</u> significant difference, a difference which would affect Dr. Ecklund-Johnson's evaluation of Plaintiff, is sufficient to overcome any inference that Plaintiff is mildly mentally retarded.

Additionally, it is the ALJ's duty to resolve ambiguities in the evidence. Therefore, even if Dr. Ecklund-Johnson's determination of the discrepancy between the test scores and the actual severity of Plaintiff's cognitive deficits is unclear, it is the ALJ's responsibility to resolve that ambiguity.  He did so here.  He determined that the test scores were not valid, and that Plaintiff's cognitive deficits were "<u>much less</u> severe than suggested by testing."  (R. 18) (emphasis added).  As discussed above, the record evidence supports these findings.

Plaintiff makes another argument which misrepresents both the decision at issue and Dr. Ecklund-Johnson's report; which appears to be intended more to obfuscate the issues than to support Plaintiff's argument; and which is irrelevant to whether Plaintiff's condition meets or equals Listing 12.05C:

> Dr. Ecklund-Johnson's impressions also discount the ALJ's conclusion that Fisher's history of alcohol abuse somehow contributed to his low IQ.  Dr. Ecklund-Johnson stated that despite the history of alcohol abuse, the course of symptoms described by Fisher "argue against substantial contributions of

these factors" to his cognitive deficits.  (R. 879).  Further, Fisher denied
current substance abuse and there was no indication that he was under the
influence during the cognitive testing.  (R. 879).

(Pl. Br. 12).

Contrary to Plaintiff's assertion, the ALJ gave no indication that a history of

alcohol abuse contributed to Plaintiff's present allegedly low IQ.  First, the ALJ did not

find that Plaintiff had a low IQ--at least not in the mildly mentally retarded range.  Rather,

as discussed above, the ALJ found Plaintiff's IQ scores invalid.  Moreover, although the

ALJ noted that alcohol abuse exacerbated Plaintiff's mental function at times in the past,

he also recognized that the alcohol abuse "appears to have ended."  (R. 18).  Further,

although Dr. Ecklund-Johnson's report indicates that Plaintiff stated he stopped drinking

alcohol one year earlier, and that Plaintiff denied recreational drug or tobacco use (R.

873), Plaintiff's assertion that "there was no indication that he was under the influence

during the cognitive testing," is merely a gratuitous argument based upon the fact that Dr.

Ecklund-Johnson did not affirmatively state that Plaintiff was under the influence during

the testing.  While the fact that Dr. Ecklund-Johnson did not state that Plaintiff was under

the influence constitutes some evidence that Plaintiff in fact was not under the influence

of alcohol during the testing, it says little, if anything, regarding whether there was no

indication that Plaintiff was under the influence.

Finally, Plaintiff's argument tends to imply that Dr. Ecklund-Johnson actually

stated there was no indication that Plaintiff was under the influence during testing and

13

that the ALJ improperly ignored or mischaracterized Dr. Ecklund-Johnson's statements regarding alcohol abuse.  After discussing Plaintiff's cognitive deficits in the "Impressions and Recommendations," section of his report, Dr. Ecklund-Johnson also discussed Plaintiff's description of "a past history of several head injuries and alcohol abuse, but the reported course of his symptoms would appear to argue against substantial contributions of these factors to the clinical picture."  (R. 879).  In essence, the psychologist merely stated his opinion that Plaintiff's past head injuries and alcohol abuse had little, if any, current effect on Plaintiff's alleged cognitive deficits.  Nonetheless, Dr. Ecklund-Johnson made a specific recommendation that Plaintiff "is encouraged to maintain abstinence from alcohol in order to avoid possibly deleterious effects on cognitive functions."  (R. 880).  It was in this context that the ALJ stated that Plaintiff's alcohol abuse appears to have ended, but that it had exacerbated his mental functioning at times in the past.  The ALJ neither ignored, nor mischaracterized the psychologist's statements regarding alcohol abuse.

The ALJ's statements regarding alcohol abuse were included in the ALJ's summarization of the evidence, they had no effect on, and they appear to be irrelevant to, the ALJ's determinations that Plaintiff's IQ scores are not valid and that Plaintiff's condition does not meet or equal Listing 12.05C.  The court finds no error in the ALJ's failure to specifically discuss whether Plaintiff's condition meets or equals the severity of Listing 12.05C.

**IV.    Consideration of Plaintiff's History of Alcohol Abuse**

Plaintiff claims that the ALJ "considered alcohol abuse to be a material factor contributing to Fisher's disability.  Yet the ALJ [erroneously] failed to apply the proper legal standard when assessing Fisher's history of alcohol abuse."  (Pl. Br. 16).  The Commissioner argues that the ALJ did not find alcohol abuse to be a contributing factor material to the determination of disability, did not find Plaintiff disabled when considering all of his impairments including alcohol abuse, and did not even find Plaintiff's past alcohol abuse to be a severe impairment.  (Comm'r Br. 14).

As Plaintiff's brief suggests, § 105 of Public Law 104-121 amended the Social Security Act in 1996 to add § 223(d)(2)(C) (codified at 42 U.S.C. § 423(d)(2)(C)) which provides that an individual will not be considered disabled within the meaning of the Act "if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled."  The Commissioner promulgated regulations which control in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability.  60 Fed. Reg. 8140, 8147, 8151 (Feb. 10, 1995) (codified at 20 C.F.R. §§ 404.1535, 416.935).  Those regulations provide:

> (a) General.  If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.

(b) <u>Process we will follow when we have medical evidence of your drug addiction or alcoholism</u>.  (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.

 (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.

  (i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.

  (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism, and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. §§ 404.1535, 416.935.

If a claimant <u>is disabled</u> and also suffers from drug addiction or alcoholism, the Commissioner must determine whether the drug addiction or alcoholism is a contributing factor material to the determination of disability.  If it is, the claimant will be found not to be "disabled" as defined in the Act.  <u>Drapeau v. Massanari</u>, 255 F.3d 1211, 1215 (10th Cir. 2001).  The key factor in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability "is whether the Commissioner would still find the claimant disabled if he or she stopped using drugs or alcohol."  <u>Id.</u>; <u>see also</u> 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1) (key factor is "whether we would still find you disabled if you stopped using drugs").

16

Pursuant to 20 C.F.R. §§ 404.1535 and 416.935, a finding of disability is a condition precedent to the determination of whether drug addiction or alcoholism is a contributing factor material to the disability determination. Drapeau, 255 F.3d at 1214 (construing the 1996 amendment of the Act along with the regulations). Therefore, in a case where drug addiction or alcoholism is suggested by the evidence, the ALJ must first apply the five-step sequential evaluation process to determine whether a plaintiff's limitations, including consideration of drug addiction or alcoholism, are disabling. If so, the ALJ must then assess plaintiff's RFC limitations which would remain if he stopped using drugs or alcohol, and apply steps four and five a second time to determine whether the limitations assessed would be disabling. Id., 255 F.3d at 1214-15.

Plaintiff's assertion that "the ALJ considered alcohol abuse to be a material factor contributing to Fisher's disability" is not supported by a proper understanding of the decision at issue. Plaintiff based his assertion upon three statements in the decision at issue and upon three statements which the ALJ made at the administrative hearing. Plaintiff relied upon the ALJ's statements in the decision (1) that Plaintiff's history of alcohol abuse has exacerbated his mental functioning at times, (2) that the past alcohol abuse does not help Plaintiff's case because the regulations preclude an award of benefits if alcohol abuse is a factor material to the disability finding, and (3) that the medical record shows Plaintiff's mental condition is stable if he takes his medication as prescribed and if he avoids substance abuse. (Pl. Br. 15-16) (citing (R. 18), and quoting (R. 19-20)).

17

Nothing in the decision establishes that the ALJ found alcohol abuse to be a contributing factor material to a finding of disability. And, Plaintiff does not assert that the three statements he cites are erroneous or contrary to the record evidence. Statement (1) was considered by the court in its consideration of Plaintiff's Listing 12.05C argument; the court found no error in that discussion and will not further belabor the point here. Statement (2) is an accurate summary of the law regarding alcohol abuse as discussed above, and it was not error for the ALJ to discuss it. Further, the ALJ specifically noted that alcohol abuse precludes award of benefits only "if substance abuse is considered a factor material to finding that individual disabled." (R. 20). The ALJ never found Plaintiff disabled, and never found that alcohol abuse is a contributing factor material to the determination of disability in this case. It is not error to summarize the law which is potentially implicated in this case because the record contains medical evidence of alcohol abuse. Finally, as discussed above in the court's consideration of Plaintiff's Listing 12.05C argument, Dr. Ecklund-Johnson's recommendation that Plaintiff "maintain abstinence from alcohol in order to avoid possibly deleterious effects on cognitive functions" is at least some evidence supporting statement (3). Plaintiff points to no record evidence to show that Plaintiff's mental condition is not as stable as the ALJ found. Plaintiff has not shown that the three statements in the decision are erroneous or that the ALJ found Plaintiff's alcohol abuse is a contributing factor material to a finding of disability.

In his attempt to show that the ALJ found alcohol abuse to be a contributing factor material to a disability determination in this case, Plaintiff also relies upon certain statements the ALJ made at the administrative hearing. (Pl. Br. 16). First, he points to the ALJ's statement that "I think . . . D&A is a material factor in any disability hearing but I think counsel has taken care of that except for one thing. Did you or did you not go to rehab for alcohol?" (R. 50). Plaintiff confirmed that he had gone to rehab for alcohol abuse in 2000, and asserted that he had been "clean" since then. (R. 50-51). The ALJ then asked Plaintiff if he would "run out of here" if the ALJ "came at [him] with a cup" for a urine sample to test for alcohol. (R. 51). Plaintiff responded that he wouldn't run out. Id. Finally, Plaintiff points to the ALJ's assertion at the hearing that Plaintiff testified to no recent substance abuse whereas in December, 2008, Dr. Barnett found Plaintiff incapable "of managing his own funds due to his recent substance abuse." (R. 63) (quoting (R. 307)).

The ALJ's questioning at the hearing clearly reflects a concern that Plaintiff might still be abusing alcohol despite his testimony to the contrary. However, in the decision, the ALJ noted that the alcohol abuse "appears to have ended." (R. 18). Moreover, as the Commissioner points out, the ALJ did not even find that alcohol abuse constituted a severe impairment during the time after Plaintiff's alleged onset date of October 31, 2005. In any case, the ALJ did not make a finding in the decision that alcohol abuse is a contributing factor material to a finding of disability. In fact, and as Plaintiff

19

acknowledges, a finding of disability is a condition precedent to consideration whether alcohol abuse is a contributing factor material to the determination of disability, and the ALJ specifically found Plaintiff is not disabled.

The court's task is to review the Commissioner's final decision, not to determine whether faulty statements or decisions were made at the hearing or elsewhere before the ALJ articulated his decision. Just as the court may not create post hoc rationalizations to support the Commissioner's decision, it may not determine the correctness or error of statements made by the ALJ in proceedings prior to the decision, and upon which the ALJ did not rely in the decision. Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005) ("[T]he district court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself."). Contrary to Plaintiff's arguments, the fact that the ALJ demonstrated concern at the hearing that Plaintiff might still be abusing alcohol, but later found in the decision that the abuse had ended, suggests that he did <u>not</u> find alcohol abuse a contributing factor material to the determination of disability in this case, but that he found it was not material to the determination. Plaintiff has not shown that the ALJ applied the incorrect legal standard in this regard.

**V.     Hand Limitations**

Plaintiff next claims that the ALJ erred when he neither provided RFC limitations regarding Plaintiff's use of his hands nor explained why he rejected evidence showing

significant hand limitations.  Plaintiff points to his testimony that he had difficulty

holding things and gripping a cane for walking, and to evidence that Dr. Ecklund-Johnson

found marked impairment in fine motor speed, and impaired to borderline fine motor

dexterity in Plaintiff's hands, and argues that the ALJ did not provide a legally sufficient

reason why he did not include those limitations in his RFC assessment.  The

Commissioner argues that the ALJ properly found Dr. Ecklund-Johnson's tests were

invalid and represented an underestimate of actual ability, and that Plaintiff's allegations

were not credible.  Therefore, he argues that it was not error for the ALJ not to include

such limitations in his RFC assessment.

As Plaintiff suggests, Dr. Ecklund-Johnson included the following statements in

the report of his test results.  "Fine motor speed was markedly impaired bilaterally.  Fine

motor dexterity was impaired in the dominant hand and borderline in the nondominant

hand."  (R. 876).  In his "Summary," he stated, "Motor performances were largely

impaired, with particularly marked impairment in manual motor speed," but he did not

include any specific opinion or recommendation regarding motor performances,

limitations, or abilities in his "Impressions and Recommendations."  (R. 879-80).  And, as

the Commissioner pointed out, the ALJ found the test scores were not valid.  Substantial

evidence in the record supports the ALJ's finding regarding hand limitations, and the

ALJ's failure to credit the limitations suggested by the testing was not error.  Moreover,

the ALJ found Plaintiff's allegations not fully credible, and stated his reasons for reaching

that conclusion. (R. 19-20). Plaintiff does not even argue that the ALJ's credibility determination was improper. Contrary to Plaintiff's argument, the ALJ provided reasons for discounting the hand limitations alleged by Plaintiff and arguably revealed in Dr. Ecklund-Johnson's[1] testing, and those reasons are supported by record evidence.

The Commissioner points to the consultative examination of Dr. Pickett in support of the ALJ's determination that Plaintiff's allegations are not credible and that the test results are not valid. (Comm'r Br. 17). As the Commissioner argues, Dr. Pickett found that there was no evidence of osteoarthritis in Plaintiff's hands, that Plaintiff had grip strength of 35 pounds in his right hand and 40 pounds in his left hand, and that range of motion was full and dexterity and motor function were preserved. (R. 338). In his reply brief, Plaintiff argues that the ALJ did not provide these justifications for discounting Plaintiff's hand limitations and that they are improper post-hoc rationalizations which may not be relied upon by the court. (Reply 1). The court disagrees with Plaintiff.

Plaintiff is correct to argue that the court may not affirm an ALJ's decision on the basis of appellate counsel's post hoc rationalizations for agency action. Knipe, 755 F.2d at 149 n.16. Moreover, the court may not create post-hoc rationalizations to explain the

---

[1]Plaintiff does not argue that the alleged motor performance test results constitute the opinion of Dr. Ecklund-Johnson, or that the ALJ improperly rejected the psychologist's opinion. Moreover, the court does not so find. As discussed above, Dr. Ecklund-Johnson questioned the validity of the test results himself; and he said nothing in his "Impressions and Recommendations" regarding motor performance or limitations in Plaintiff's use of his hands. (R. 879-80).

Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision. Grogan, 399 F.3d at 1263. By considering legal or evidentiary matters not considered by the ALJ, a court risks violating the general rule against post hoc justification of administrative action. Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004). However, the evidence at issue here was, in fact, considered by the ALJ. The ALJ stated that he considered the entire record in assessing Plaintiff's RFC, and he specifically referred to Dr. Pickett's report at the hearing. (R. 62-63). Further, as discussed above, the ALJ found that Plaintiff's testimony was not credible, and that the results of Dr. Ecklund-Johnson's testing was not valid. Those were the ALJ's rationale, not that of the court or of the Commissioner. Dr. Pickett's report is merely additional record evidence supporting the ALJ's rationale. The Social Security Act requires the court to review the record to determine if substantial evidence supports the decision. 42 U.S.C. § 405(g) (sentence five); e.g. Lax, 489 F.3d at 1084. The Commissioner was not wrong to point to Dr. Pickett's report, and the court does not err in reviewing such evidence supporting the decision.

Plaintiff has shown no error in the ALJ's consideration of hand limitations. Having failed to show that the alleged hand limitations were improperly discounted, Plaintiff cannot show that the ALJ erred in failing to include those limitations in his hypothetical questioning of the vocational expert.

**VI.     Testimony of Plaintiff's Case Manager, Tiki Warren**

In his final allegation of error, Plaintiff claims the ALJ erred in failing to discuss the testimony of Plaintiff's case manager, Tiki Warren, because the testimony support's Plaintiff's own testimony and lends credence to the opinion of Plaintiff's social worker, Elizabeth Chao.  (Pl. Br. 23).  He notes that written findings regarding the credibility of testimony by a third-party witness is generally not required when "the written decision reflects that the ALJ considered the testimony," but argues that the ALJ did not mention or refer to Mr. Warren's testimony anywhere in the decision, and that this is an error requiring remand.  Id. (citing Blea, 466 F.3d at 915; Adams v. Chater, 93 F.3d 712, 715 (10th Cir. 1996)).  The Commissioner argues that Mr. Warren's statements were neither uncontroverted nor significantly probative, and were cumulative to Plaintiff's allegations and of Ms. Chao's opinions.  (Comm'r Br. 15).  He argues that the ALJ found Plaintiff's allegations not entirely credible, stated his reasons for doing so, and also properly discounted Ms. Chao's opinions for adequate reasons as stated in the decision.  Id.  The Commissioner argues that the ALJ questioned Mr. Warren at the hearing and considered his testimony, and stated that he had considered all of the evidence.  Id.  He argues that third-party testimony may be discounted based on the same evidence used to find a claimant not credible, and that Mr. Warren's testimony is properly discounted for the same reasons given to find Plaintiff not credible and to discount Ms. Chao's opinion.  Id. (citing Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992)).  He argues that although it may have been preferable for the ALJ to specify his reasons for rejecting Mr. Warren's

testimony, this "arguable deficiency in opinion-writing technique" does not detract from the outcome of the decision since the evidence supports both the ALJ's decision and the determination to discount Mr. Warren's testimony.  Id. at 15-16.  The court finds Blea and Adams control the decision in this case, and require remand for proper consideration of Mr. Warren's testimony.

As Plaintiff points out, an ALJ is not required to make specific, written findings of each witness's credibility when the written decision reflects that the ALJ considered the testimony.  Blea, 466 F.3d at 914-15; Adams, 93 F.3d at 715.  In Adams, the court "decline[d] claimant's invitation to adopt a rule requiring an ALJ to make specific written findings of each witness's credibility, particularly where the written decision reflects that the ALJ considered the testimony."  93 F.3d at 715.  The Adams court determined "that the ALJ considered the testimony of claimant's wife in making his decision because he specifically referred to it in his written opinion," and the court found no error in the ALJ's failure to make specific, written findings regarding the testimony.  Id.  Thirteen years later, the Tenth Circuit confirmed the rule that an ALJ is not required to make specific written findings of credibility regarding third-party testimony if the written decision reflects that the ALJ considered it.  Blea, 466 F.3d at 915.

The relevant facts in Blea are substantially identical to those presented here, and the Commissioner does not attempt to distinguish them.  In fact, the Commissioner did not even address Blea or Adams in his response brief.  In Blea, the plaintiff argued that

25

remand was necessary because the ALJ failed to discuss or consider the lay testimony of the plaintiff's wife. Blea, 466 F.3d at 914. The Commissioner's decision in Blea did not mention any particulars of Mrs. Blea's testimony, and never even mentioned that she had testified regarding the nature and severity of her husband's impairments. Id. at 914. The Commissioner responded that there was no reversible error because the ALJ is not required to make written findings about each witness's credibility. Id. The court noted that the Commissioner had stated only part of the rule in this circuit and corrected the Commissioner, "[i]n actuality, the ALJ is not required to make specific written findings of credibility only if 'the written decision reflects that the ALJ considered the testimony.'" Id. at 915 (quoting Adams, 93 F.3d at 715). The Blea court noted that the ALJ had not mentioned Mrs. Blea's testimony or referred to the substance of her testimony anywhere in the written decision, and concluded that "it is not at all clear that the ALJ considered Mrs. Blea's testimony in making his decision." Id. (internal quotation marks, brackets, and citation omitted). Therefore, the case was remanded to consider Mrs. Blea's testimony properly. Id.

Here, Mr. Warren testified that he had been Plaintiff's case manager since October, 2007 and that he sees Plaintiff at least once a week. (R. 64-65). He testified regarding Plaintiff's depression, pain, and missed appointments. Id. at 65-66. Plaintiff argues that Mr. Warren's testimony supports the opinion of Ms. Chao, and Plaintiff's own allegations of symptoms, and implies that had the ALJ properly considered the testimony

26

he would have accorded greater weight or credibility to those allegations.  The Commissioner argues that the ALJ considered Mr. Warren's testimony along with all of the evidence, and if he had discussed the testimony he would have discounted it for the same reasons he discounted Plaintiff's allegations and Ms. Chao's opinions.  However, the ALJ did not discuss Mr. Warren's testimony or refer to it in any other way in the written decision.  Therefore, it is by no means clear that the ALJ considered Mr. Warren's testimony in making his decision, and the court may not create a post-hoc rationalization regarding the weight accorded that testimony.

Moreover, the Eighth Circuit precedent of <u>Robinson</u>, to which the Commissioner appeals, even if it were controlling in this circuit, does not support a different result.  In <u>Robinson</u>, the court noted that the agency failed to give specific reasons for discrediting the testimony of plaintiff's wife as Eight Circuit law requires, but found that the error "in opinion-writing technique" was harmless because the decision revealed "that the ALJ specifically addressed Jewel Robinson's testimony and found it not credible."  <u>Robinson</u>, 956 F.2d at 841.  In <u>Robinson</u>, the written decision revealed that the lay witness testimony had been considered, whereas in this case, the written decision does not reveal that Mr. Warren's testimony was considered.  Therefore, remand is necessary for the Commissioner to consider Mr. Warren's testimony properly and incorporate that consideration into the decision.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is

REVERSED, and judgment shall be entered pursuant to the fourth sentence of 42 U.S.C.

§ 405(g) REMANDING the case for further proceedings consistent with this decision.

Dated this <u>6th</u> day of January 2012, at Kansas City, Kansas.


<u>s:/  John W. Lungstrum</u>
**John W. Lungstrum**
**United States District Judge**

28